```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TRUSTEES OF THE LEATHER GOODS,                        :
HANDBAGS, AND NOVELTY WORKERS'                        :
UNION LOCAL 1 JOINT RETIREMENT FUND,                  :     REPORT &
                                                      :     RECOMMENDATION
                    Plaintiffs,                       :     19-CV-1722 (RJD) (SMG)
                                                      :
    -against-                                         :
                                                      :
CROSSBAY SEASHELL FISH MARKET, INC.,                  :
XYZ CORPORATIONS (1-10), and JOHN AND                 :
JANE DOES (1-10),                                     :
                                                      :
                    Defendants.                       :
                                                      :
----------------------------------------------------------------x
GOLD, STEVEN M., U.S. Magistrate Judge:
```

**INTRODUCTION**

Plaintiffs, trustees of the Leather Goods, Handbags, and Novelty Workers' Union Local 1 Joint Retirement Fund (the "Fund"), bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Complaint ("Compl.") ¶¶ 7, 22, Dkt. 1. Plaintiffs seek to recover withdrawal liability that they allege defendant Crossbay Seashell Fish Market, Inc. ("Crossbay") owes to the Fund, as well as accrued interest, liquidated damages, attorney's fees, and costs.[1] *Id.* ¶¶ 2, 23.

Upon plaintiffs' application, Dkt. 6, and in light of defendant's failure to appear in or otherwise defend this action, the Clerk of Court noted the default of the defendant on April 23, 2019, Dkt. 7. Plaintiffs subsequently filed a motion for default judgment against Crossbay. Dkt. 8. United States District Court Judge Raymond J. Dearie has referred the motion to me for

---

[1] Although their complaint names anonymous defendants XYZ Corporations 1-10 and John and Jane Does 1-10, plaintiffs have never identified or sued any defendants other than Crossbay.

report and recommendation. Order dated May 2, 2019. For the reasons that follow, I respectfully recommend that the motion be granted and that judgment be entered in the amounts indicated below.

## FACTS

Plaintiffs are the trustees of the Fund, a multiemployer employee benefit plan as defined by ERISA. Compl. ¶¶ 6, 7. Defendant Crossbay is a for-profit domestic corporation with its principal place of business in New York State. *Id.* ¶ 8. Crossbay entered into a collective bargaining agreement (the "CBA") with the Leather Goods, Handbags, and Novelty Workers' Union Local 1 (the "Union"). *Id.* ¶ 12. The CBA required Crossbay to remit contributions to the Fund on behalf of covered employees. *Id.*; Declaration of George Leventis ("Leventis Decl.") ¶ 3, Dkt. 8-7.

On December 31, 2013, the Fund experienced a mass withdrawal; that is, every contributing employer, including defendant, withdrew from the plan and became obligated to make withdrawal liability payments. Compl. ¶¶ 13, 14. By certified letter dated May 28, 2014, the Fund notified defendant Crossbay that its withdrawal liability consisted of three components that were being calculated in stages as actuarial information became available: 1) first, initial withdrawal liability, 2) second, redetermination liability, and 3) finally, reallocation liability. Compl. Ex. A ("May 28, 2014 Letter"), Dkt. 1-1. The letter further stated that the Fund and its actuary calculated defendant's initial and redetermination liability to be $388,338 and demanded that Crossbay make quarterly payments of $3,552.53 to commence no later than 60 days after the date of the letter, or July 27, 2014. *Id.*; Compl. ¶ 15. Then, by certified letter dated January 29, 2016, the Fund notified defendant that its reallocation liability was $300,173 and, together with its initial and redetermination liability, calculated the total withdrawal liability amount

outstanding as $716,478. Compl. ¶ 16; Compl. Ex. B ("January 29, 2016 Letter"), Dkt. 1-2. The January 29, 2016 Letter likewise called for Crossbay to make quarterly payments of $3552.53 on specified dates and continuing in perpetuity. *Id.* at 2.

Thereafter, by certified letter dated December 7, 2018, the Fund notified defendant that it had failed to make eight quarterly payments due between January 2017 and October 2018 and warned that, unless full payment of the outstanding amount was made within 60 days, defendant would be deemed in default and the entire amount of its withdrawal liability would immediately be due and owing pursuant to 29 U.S.C. § 1399(c)(5). Compl. ¶ 18; Compl. Ex. C ("December 7, 2018 Letter"), Dkt. 1-3. When Crossbay did not cure its default within the time provided, the Fund, by certified letter dated February 22, 2019, demanded immediate payment of the full outstanding withdrawal liability amount plus accrued interest. Compl. ¶ 19; Compl. Ex. D ("February 22, 2019 Letter"), Dkt. 1-4. On March 26, 2019, plaintiffs commenced this lawsuit, in which they allege that defendant has not made any withdrawal liability payments even to this day. Compl. ¶ 17.

## DISCUSSION

**I.     Legal Standards**

    *A.     Standard of Review*

Once found to be in default, a defendant is deemed to have admitted all the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., et.al.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted); *accord Au Bon Pain Corp. v. Artect,*

*Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

### B. Applicable Law

"Withdrawal liability represents the withdrawing employer's proportionate share of the pension plan's unfunded vested benefits." *Gesualdi v. Scara-Mix, Inc.*, 2017 WL 9485710, at *3 (E.D.N.Y. Feb. 7, 2017) (quotation marks and internal citations omitted), *report and recommendation adopted*, 2017 WL 945090 (E.D.N.Y. Mar. 10, 2017). *See also Bowers v. Andrew Weir Shipping, Ltd.*, 810 F. Supp. 522, 524 n.1 (S.D.N.Y. 1992) (citing 29 U.S.C. §§ 1381, 1391), *amended*, 817 F. Supp. 4 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 800 (2d Cir. 1994).

Concerned that "unregulated withdrawals from multiemployer pension plans could endanger their financial vitality and deprive workers of vested pension rights," Congress developed "a comprehensive legislative scheme designed to address the adverse consequences that arise when individual employers terminate their participation in, or withdraw from, multiemployer pension plans." *Burke v. Hamilton Equipment Installers, Inc.*, 2006 WL 3831380, *4 (W.D.N.Y. 2006) (internal quotation marks omitted), *aff'd*, 528 F.3d 108 (2d Cir. 2008). Under this scheme, following a withdrawal, the plan sponsor has authority to determine the amount of withdrawal liability, notify the employer of the amount, and collect that amount from the employer. *Bd. of Trs. of the UFCW Local 50 Pension Fund v. Baker Hill Packing Inc.*, 2015 WL 867013, at *6 (E.D.N.Y. Feb. 27, 2015) (citing 29 U.S.C. §§ 1382, 1399); *Gesualdi*, 2017 WL 9485710, at *12. Within 60 days after receiving such notice, the employer must make payments in accordance with the plan sponsor's payment schedule. *Baker Hill Packing Inc.*, 2015 WL 867013, at *6.

## II. Liability

Plaintiffs have established defendant's liability as a matter of law. As stated above, on

December 31, 2013, the Fund experienced a mass withdrawal, meaning that every contributing employer withdrew from the plan. *See* 29 U.S.C. § 1341A(a)(2) and 29 C.F.R. § 4001.2; Compl. ¶ 13. As a result, while defendant Crossbay was no longer required to make contributions to the Fund, it became obligated to pay withdrawal liability pursuant to 29 U.S.C. § 1382 and 1383(a) and 29 C.F.R. §§ 4219.11 and 4219.12. Compl. ¶ 14. Thereafter, the Fund notified defendant of the amount of its withdrawal liability and set a payment schedule as provided in 29 U.S.C. § 1399(b). May 28, 2014 Letter, Dkt. 1-1; January 29, 2016 Letter, Dkt. 1-2. When eight of those payments were missed, the Fund warned defendant pursuant to 29 U.S.C. § 1399(c)(5)(A) that failure to cure within 60 days would result in defendant's default, and that the entire amount of withdrawal liability would in that event be immediately due and owing. Compl. ¶¶ 18-19; December 7, 2018 Letter, Dkt. 1-3. Plaintiffs assert that defendant has not made any payments to date. Compl. ¶ 17. Plaintiffs have thus established the elements of their claim for withdrawal liability.

## III.  Damages

While the allegations of a complaint pertaining to liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Greyhound Exhibitgroup,* 973 F.2d at 158. Rather, a court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991) (holding that a court is not required to conduct a hearing to determine the basis for damages in every case); *Fustok*, 873 F.2d at 40 (noting that a court may rely on detailed affidavits and documentary evidence as the basis for determining damages to be awarded in a default

5

judgment).

Plaintiffs have submitted two declarations of George Leventis, the Executive Director of the Fund. These declarations detail an actuary's calculation of defendant's withdrawal liability and attach supporting documentation. Leventis Decl., Dkt. 8-7; Leventis Supp. Decl., Dkt. 11-1. Defendant has not submitted any opposition. Accordingly, and for the reasons that follow, I conclude that a hearing on the issue of damages is unwarranted and I respectfully recommend that plaintiffs be awarded the principal amount of withdrawal liability they claim, together with interest, liquidated damages, and attorney's fees and costs as calculated below.

A. *Principal Amount of Withdrawal Liability*

As set forth above, plaintiffs allege that the withdrawal liability calculated by plaintiffs' actuary totals $716,478. January 29, 2016 Letter. Defendants are precluded as a matter of law from contesting plaintiffs' determination of the amount of withdrawal liability owed for the following reasons.

ERISA provides that '[a]s soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall (A) notify the employer of (i) the amount of the liability, and (ii) the schedule for liability payments, and (B) demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1). Plaintiffs did so by letters dated January 29, 2016 and December 7, 2018. Although an employer who receives a notice of an amount due pursuant to § 1399(b)(1) may "ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments," 29 U.S.C. § 1399(b)(2)(A)(i), there is no indication that Crossbay sought any review here.

ERISA further provides that

> (a)(1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of

6

> this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of --
> (A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or
> (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title. . .
> (b)(1) If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in State or Federal court of competent jurisdiction for collection.

29 U.S.C. § 1401(a), (b)

In the January 29, 2016 Letter, and as required by 29 U.S.C. § 1399(b)(1), plaintiffs notified Crossbay of the amount of its liability, set forth a schedule for payments, and demanded that payments be made in accordance with that schedule. Defendant Crossbay, though, neither asked plaintiffs to review any specific matter nor initiated an arbitration proceeding. Compl. ¶ 21. Accordingly, the principal amount of its withdrawal liability as determined by the Fund is now fixed and may not be challenged. *See, e.g.*, *Baker Hill Packing Inc.*, 2015 WL 867013, at *7 ("[I]f an employer fails to initiate the arbitration process to contest the amount of withdrawal liability assessed against it, the employer has waived its right to arbitration, and a federal court will not make an independent determination that the plan sponsor's assessment was unreasonable." (quoting *Vacca v. Bridge Chrysler Jeep Dodge, Inc.*, 2008 WL 4426875, at *6 (E.D.N.Y. Sept. 4, 2008))); *Labarbera v. United Crane & Rigging Servs.*, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) ("The law is unforgiving where, as here, an employer fails to take action in a timely manner after being notified. [] Any dispute concerning the plan's assessment of liability had to be settled through arbitration, and an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated."). Accordingly, I respectfully recommend that plaintiff be awarded $716,478 on its

claim for unpaid withdrawal liability.

   B. *Interest*

Plaintiffs also seek $72,291.70 in interest that has accrued on the withdrawal liability amount as of April 30, 2019. Plaintiffs' Mem. of Law in Supp. of their Mot. for Entry of Default Judgment against Defendant ("Pls.' Mem.") at 2, Dkt. 8-1; Compl. ¶ 23.

Plaintiffs are entitled to recover interest on the amount of withdrawal liability owed. The failure of an employer to "make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." 29 U.S.C. § 1451(b); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 614 (E.D.N.Y. 2017). Thus, the damages that may be assessed against an employer who has not made withdrawal liability payments include the following:

> (A) the unpaid [withdrawal liability],
> (B) interest on the unpaid [withdrawal liability],
> (C) an amount equal to the greater of –
>   (i) interest on the unpaid [withdrawal liability], or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2)

Interest on unpaid withdrawal liability is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2); *Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995). Plaintiffs have submitted the relevant plan document and a supplemental affidavit of George Leventis, in which he states that the plan document "does not prescribe a rate of interest to be applied to unpaid contributions or

8

withdrawal liability." Leventis Supp. Decl. ¶ 3; Leventis Supp. Decl. Ex. B ("Plan Document"), Dkt. 11-3. Plaintiffs have also submitted a chart detailing the interest calculations from January 29, 2016 to April 30, 2019 and stating, "Interest is calculated using the [Pension Benefit Guaranty Corporation or] PBGC select interest rate for the month of December of the year of the Mass Withdrawal. The rate for December 2013 was 3.00% per annum." Leventis Supp. Decl. Ex. A ("Interest Chart"), Dkt. 11-2.

In the absence of a plan document specifying how interest is to be assessed, courts have approved the use of PBGC rates to calculate interest on unpaid withdrawal liability. *See, e.g.*, *UFCW Local 50 Pension Fund v. Food Depot, Inc.*, 2018 WL 2187657, at *3 (E.D.N.Y. Apr. 24, 2018), *report and recommendation adopted*, 2018 WL 2186407 (E.D.N.Y. May 10, 2018); *Trs. of Local 813 Pension Tr. Fund v. Frank Miceli Jr. Contracting, Inc.*, 2017 WL 972104, at *1 n.2 (E.D.N.Y. Mar. 13, 2017) (collecting cases); *Bd. of Trs. of UFCW Local 342 Pension Fund v. Merrick Associated Mkt., Inc.*, 2012 WL 4049845, at *4 (E.D.N.Y. Aug. 21, 2012), *report and recommendation adopted*, 2012 WL 4049996 (E.D.N.Y. Sept. 13, 2012); *Board of Trs. of the UFCW Local 174 Pension Fund v. Karl Ehmer Delicatessen*, 2011 WL 4382862, at *3 (E.D.N.Y. Aug. 8, 2011), *report and recommendation adopted*, 2011 WL 4382515 (E.D.N.Y. Sept. 20, 2011).

It appears, though, that plaintiffs may have understated the applicable interest rate. On December 31, 2013—the date of the mass withdrawal—the PBGC interest rate applicable to overdue withdrawal liability payments was 3.25%, not 3% as plaintiffs state. *See* PENSION BENEFIT GUARANTY CORP., http://www.pbgc.gov/prac/interest/oodwl.html.[2] Moreover, the

---

[2] The court may take "judicial notice of the rates published in the Federal Register and compiled by the PBGC." *Food Depot, Inc.*, 2018 WL 2187657, at *3.

PBGC interest rate increased over time, and was never as low as 3% after December 31, 2013. *Id.* When calculating interest on withdrawal liability, courts have applied the PBGC interest rate in effect during the period for which the calculation is being made, not the rate in effect at the time the withdrawal liability became due. *See Food Depot, Inc.*, 2018 WL 2187657, at *3; *Karl Ehmer Delicatessen*, 2011 WL 4382862, at *3 n.5, *4 (applying 3.25% interest on withdrawal liability because the PBGC rates remained constant during the relevant period); *Torpey v. Reliable Fire Prot. Corp.*, 2010 WL 5644840, at *3 (E.D.N.Y. Dec. 3, 2010), *report and recommendation adopted*, 2011 WL 256760 (E.D.N.Y. Jan. 26, 2011).

Although plaintiffs may have understated the rate of interest they are entitled to collect, they should not be awarded a judgment based upon a higher interest rate. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "By limiting damages to what is specified in the 'demand for judgment,' the rule ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer." *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007). Plaintiffs' complaint states an amount due that was apparently determined based upon interest calculated at the rate of 3% per annum. Compl. ¶¶ 27, 31. Accordingly, although the PBGC rate was at all relevant times somewhat higher, I recommend that interest be awarded at an annual rate of 3%.

On the other hand, it is apparent from the Interest Chart that plaintiffs' actuary compounded interest annually; that is, the actuary calculated the interest due for a specific year, added that amount to the total withdrawal liability owed, and then used this sum to calculate the next year's interest. *See* Interest Chart, Dkt. 11-3. Courts in this district, however, have routinely declined to award compounded interest where the plan document does not explicitly

provide for it. *See, e.g.*, *Karl Ehmer Delicatessen*, 2011 WL 4382862, at *3 ("Plaintiff has not provided any support for compounding interest and the court is not aware of any authority for doing so. To the contrary, the only relevant authority I have found recommends that interest on withdrawal liability not be compounded." (citing *Bd. of Trs. of the Private Sanitation Union Local 813 Pension Fund v. Metro Demolition Contracting Corp.*, 2010 WL 5621275, at *4 (E.D.N.Y. Sept. 17, 2010), *report and recommendation adopted sub nom. Bd. Of Trs. of Private Sanitation Union Local 813 Pension Fund v. Metro Demolition Contracting Corp.*, 2011 WL 197588 (E.D.N.Y. Jan. 20, 2011)).

To complicate matters further, plaintiffs have also incorporated interest into their calculation of defendant's underlying withdrawal liability. In the actuary report attached to the January 29, 2016 Letter, Dkt. 8-9, a section entitled "Reallocation Liability Display" reveals that the "[s]um of initial withdrawal liability and redetermination liability" for defendant is $388,338, and its reallocation liability is $300,173; thus, defendant's "Total Mass Withdrawal Liability as of December 31, 2013" amounted to $688,511. *Id.* at 4. Plaintiffs then note that the "Interest to December 1, 2015 (3.00%) from later of date of demand and December 31, 2013" is $27,967. *Id.* When this interest amount is added to the total mass withdrawal liability, it equals $716,478. *Id.* However, in the actual letter, plaintiffs state, "When th[e] reallocation liability is factored into the Fund's assessment for the three components of mass withdrawal liability, the total amount of withdrawal liability currently outstanding is $716,478." *Id.* at 1. This amount is reiterated in a subsequent letter, February 22, 2019 Letter at 3, Dkt. 1-4, and in the complaint, Compl. ¶ 16. In other words, plaintiffs have not distinguished between the withdrawal liability amount itself, $688,511, and the interest accrued on the withdrawal liability as of December 1, 2015 in the amount of $27,967. However, bearing in mind that "any disputes over an employer's

11

withdrawal liability are to be resolved through arbitration," *Baker Hill Packing Inc.*, 2015 WL 867013, at *7, and that defendant never initiated arbitration or contested plaintiffs' withdrawal liability determination, I do not independently assess whether the $716,478 sought by plaintiffs is unreasonable or should not be deemed the principal amount of withdrawal liability due and on which interest should be awarded, *see Vacca*, 2008 WL 4426875, at *6.

Accordingly, I respectfully recommend that plaintiffs be awarded simple interest at an annual rate of 3% on the principal amount of $716,478. Interest on withdrawal liability accrues from the date of the first delinquent payment, *Karl Ehmer Delicatessen*, 2011 WL 4382862, at *2 (citing 29 U.S.C. § 1399(c)(5)). Plaintiffs have calculated interest beginning on January 29, 2016. Leventis Supp. Decl. Ex. B at 2, Dkt. 11-3. The December 7, 2018 Letter, though, states that defendant "failed to make eight [8] quarterly withdrawal liability payments totaling $28,420.24 that were due between January 2017 and October 2018." The complaint similarly alleges that Crossbay failed to make quarterly payments that were due between January 2017 and October 2018. Compl. ¶ 18. I therefore recommend that interest be calculated from January 1, 2017 until the date final judgment is entered.

C. *Liquidated Damages*

As noted above, ERISA provides for liquidated damages "in an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Plaintiffs do not identify any plan provision addressing the means for determining liquidated damages and accordingly seek liquidated damages only in an amount equal to the amount of interest due. Pls.' Mem. at 6; Leventis Decl. ¶ 16. I therefore recommend that plaintiffs be awarded liquidated damages in an amount equal to the interest determined to be

due at the time final judgment is entered.

D. Attorney's Fees and Costs

Plaintiffs seek to recover their attorney's fees and costs. Compl. ¶ 23; Pls.' Mem. at 7; Declaration of Neil V. Shah ("Shah Decl.") ¶¶ 23–24, Dkt. 8-2. An award of attorney's fees under ERISA is mandatory. 29 U.S.C. § 1132(g)(2)(D); *Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995); *Merrick Associated Mkt., Inc.*, 2012 WL 4049845, at *2.

In the Second Circuit, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal quotations omitted). In performing this analysis, the court has "considerable discretion." *Id.* at 190.

Claims for attorney's fees in the Second Circuit generally must be supported by contemporaneous time records which "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). However, submissions supported by "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees." *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991).

Courts in this district have recently approved hourly rates ranging from $300 to $450 hour for partners, $200 to $300 for senior associates, and $100 to $200 for junior associates. *Cabrera v. Schafer*, 2017 WL 9512409, at *11 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017); *Gesualdi v. Lubco*

*Transp. Inc.*, 2017 WL 946297, at *4 (E.D.N.Y. Feb. 22, 2017). Courts have also recognized "the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of the typical ranges." *Gesualdi*, 2017 WL 946297, at *4 (internal quotation marks omitted).

Plaintiffs have submitted time records that indicate the date, duration, and nature of the work performed by their counsel. Shah Decl. Ex. 4 ("Timesheets"), Dkt. 8-6. Plaintiffs request a "blended rate" of $325 per hour for time expended by their attorneys and $125 per hour for time spent by support staff, resulting in a total of $8,356.25 in attorneys' fees. Shah Decl. ¶¶ 22, 28.

Three attorneys from the law firm Proskauer Rose LLP worked on this case: Neil V. Shah, Esq., Neal S. Schelberg, Esq., and Kyle C. Hansen, Esq. Shah Decl. ¶¶ 23–24. Mr. Shah worked on the case for 6.25 hours, Mr. Schelberg worked on the case for 0.25 hours, and Mr. Hansen worked on the case for 18.25 hours. *Id.* ¶¶ 20, 24. In addition, three support staff worked on the case for a total of 2.50 hours. Shah Decl. ¶¶ 22, 24.

Mr. Shah has reportedly been practicing law since 2010 and has approximately four years of experience "litigating all aspects of ERISA matters." Shah Decl. ¶ 20. Notably, though, Mr. Shah, while stating that the attorneys in this matter are "members of Proskauer's dedicated ERISA litigation practice group," has not provided the Court with any biographical information about Mr. Schelberg other than describing him as a partner, or any other information whatsoever regarding Mr. Hansen. *Id.* ¶¶ 21, 24.

Despite this lack of detailed information, plaintiffs ask for an award based upon a "blended rate of $325 per hour" because their law firm "bills the Fund at a blended rate for all attorney work that is well in excess of the rates requested." Shah Decl. ¶ 22. However, the cases

14

cited by plaintiffs in support of their request for a blended rate are inapposite because they either do not involve blended attorney's fee rates or because a request for a blended rate was rejected by the court. Pls.' Mem. at 7–8 (citing *Zhiwen Chen v. County of Suffolk*, 927 F. Supp. 2d 58, at *72 (E.D.N.Y. 2013); *Tr. of Local 7 Tile Indus. Welfare Fund v. Richard's Imp. Bldg., Inc.*, 2013 WL 3967326, at *5 (E.D.N.Y. Aug. 1, 2013); *Trs. of the Local 807 Labor-Mgmt. Pension Fund v. Mar. Fish Prods., Inc.*, 2012 WL 2609321, at *17 (E.D.N.Y. May 31, 2012), *report and recommendation adopted*, 2012 WL 2674667 (E.D.N.Y. July 5, 2012)). Courts in this district have rarely approved blended attorney's fees. *See Demopoulos v. Sweet Clover Farms, Inc.*, 2016 WL 8711717, at *16 (E.D.N.Y. Sept. 1, 2016) (stating that "while a blended rate may be appropriate where there is significant time spent on a matter by partners, senior associates, and junior associates, here all of the work was performed by a relatively junior associate."), *report and recommendation adopted*, 2016 WL 8711136 (E.D.N.Y. Sept. 30, 2016). Here, the vast majority of the legal work was performed by Mr. Hansen, and a blended rate is therefore not appropriate. Accordingly, I determine a separate hourly rate for each attorney, bearing in mind the straightforward nature of this default action.

As mentioned previously, Mr. Schelberg is a partner who spent a minimal amount of time on this case. Shah Decl. ¶ 24; Timesheets. Moreover, the lack of detail about Mr. Schelberg's education and experience precludes a conclusion that Mr. Schelberg's rate should be higher than that awarded to other law firm partners. Accordingly, I respectfully recommend that Mr. Schelberg be awarded $360 an hour.

With respect to Mr. Shah, the requested rate of $325 is higher than the prevailing rates in this district for attorneys with comparable experience. *See Cabrera*, 2017 WL 9512409, at *11 (noting the "minimal information provided concerning each associate" and reducing rate to $140

15

per hour for associates with three to seven years of experience and $200 per hour for a senior associate). Indeed, in a recent case, Judge Gershon reduced Mr. Shah's requested blended hourly rate of $300 to $200 after considering evidence similar to that provided here. *Trs. of Local 813 Ins. Tr. Fund v. Pers. Touch Funeral Serv., Inc.*, 2019 WL 2295775, at *3 (E.D.N.Y. May 30, 2019); *see also D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 622 (noting that courts may take "judicial notice of the rates awarded in prior cases and [rely on their] own familiarity with the rates prevailing in the district" (quoting *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (alteration in original))). For these reasons, I recommend that plaintiffs' fee award be calculated at a rate of $200 per hour for Mr. Shah's time.

Because plaintiffs have not provided any information about when Mr. Hansen graduated from law school or how long he has been handling ERISA cases, plaintiffs' fee award should be based on a rate for Mr. Hansen's time that is toward the lower end of the range for junior attorneys in this district. *See Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Dipizio Constr., Inc.*, 2016 WL 3033722, at *6 (E.D.N.Y. May 25, 2016) (reducing requested hourly rate from $225 to $100 for attorney who had graduated from law school two years prior); *Gesualdi v. Stallone Testing Labs., Inc.*, 2010 WL 7066679, at *7 (E.D.N.Y. Dec. 17, 2010) (determining that $125 an hour was appropriate rate for attorney who was admitted to the bar a year prior and had only six months of relevant experience), *report and recommendation adopted*, 2011 WL 2940606 (E.D.N.Y. July 19, 2011). Accordingly, I respectfully recommend awarding $175 per hour for work performed by Mr. Hansen.

The requested hourly rate of $125 is also higher than is reasonable for work performed by litigation support staff. An award based upon $90 per hour is more appropriate. *Trs. of Local 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC*, 2018 WL 6344188, at *1 (E.D.N.Y.

16

Dec. 5, 2018); *New York City Dist. Council of Carpenters v. Trs. of New York City Dist. Council of Carpenters Welfare Fund*, 2018 WL 3768586, at *5 (E.D.N.Y. July 23, 2018) (recommending adjusting the hourly rate for legal assistants from $100 to $90), *report and recommendation adopted sub nom. Trs. of New York City Dist. Council of Carpenters Welfare Fund v. Best Made Floors, Inc.*, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018); *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Sanders Const.*, 2015 WL 1608039, at *4 (E.D.N.Y. Apr. 10, 2015) (holding $90 to be a reasonable hourly rate for the work of legal assistants).

Finally, it was reasonable for counsel and support staff to devote 27.25 hours to this case. *Gesualdi v. Fortunata Carting, Inc.*, 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) ("Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case."); *Ferrara v. Metro D Excavation & Found., Inc.*, 2011 WL 3610896, at *7 (E.D.N.Y. July 7, 2011), *report and recommendation adopted*, 2011 WL 3625448 (E.D.N.Y. Aug. 16, 2011) (approving 32.1 hours).

For the reasons stated above, I respectfully recommend that attorney's fees be awarded as follows:

**Table 2**

| **Name** | **Hourly Rate** | **Hours Worked** | **Award** |
|---|---|---|---|
| Neal S. Schelberg, Esq. | $360 | 0.25 | $90 |
| Kyle C. Hansen, Esq. | $175 | 18.25 | $3,193.75 |
| Neil V. Shah, Esq. | $200 | 6.25 | $1,250 |

| Litigation support staff | $90 | 2.5 | $225 |
| Total | | 27.25 | $4,758.75 |

Finally, plaintiffs seek $3.30 in costs for copying and printing. Although plaintiffs have not submitted supporting documentation, the amount is de minimis and should be awarded.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs' motion for default judgment against defendant be granted, and that a final judgment be entered awarding damages as follows:

(i) $716,478 in withdrawal liability;

(ii) Interest on the above amount at the rate of 3% per annum, without compounding, calculated from January 1, 2017 until the date judgment is entered;

(iii) Liquidated damages equal to the amount of the interest awarded pursuant to paragraph (ii) above;

(iv) $4,758.75 in attorney's fees;

(v) $3.30 in costs; and

(vi) Post-judgment interest at the rate provided under 28 U.S.C. § 1961 from the date the final judgment is entered until it is paid.

Any objections to the recommendations made in this Report must be submitted within fourteen days after filing of the Report and, in any event, no later than September 13, 2019. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

Plaintiffs shall forthwith serve this Report and Recommendation on defendant by letter sent to its last known address and by email sent to its last known email address and file proof of service with the Court.

                                                        /s/
                                      STEVEN M. GOLD
                                      United States Magistrate Judge

Brooklyn, New York
August 30, 2019

*U:\#MS 2018-2019\Trustees V. Crossbay Seasell Fish Market, Inc. Et Al., 19-Cv-1722 (RJD)\19cv1722 R&R FINAL.Docx*